Layne *v.* Bone.

## G. W. LAYNE, Ex'r. *v.* W. T. BONE *et al.*

MORTGAGE. *Relinquishment. Effect. Fraud.* Bone executed a mortgage on house and lot to Layne, which was registered. Afterwards he sold the property mortgaged to D. & H. at its full value, and executed a deed in fee simple. D. & H. had no actual notice of the mortgage. Being indignant at the fraud, D. & H. prepared and filed an attachment bill attaching other property of B. To prevent the attachment, Layne, at request of B, relinquished his mortgage and took another mortgage on property which D. & H. were about to attach. D. & H. dismissed their bill. Layne files a bill to set aside relinquishment of first mortgage on the ground that same was procured by fraudulent representations of B., and seeking to set up the first mortgage, alleging he repudiated the second mortgage as soon as he discovered the fraud of B. *Held*, he could not succeed, though induced to relinquish by B.; D. & H. not participating in or having any knowledge of the fraud.

### FROM WILSON.

Appeal from the Chancery Court at Lebanon. GEO. E. SEAY, Ch.

MARTIN & BEARD for complainant.

STOKES & SON and W. S. GRIBBLE for defendants.

COOKE, Sp. J., delivered the opinion of the Court.

On January 12, 1876, Bone executed a mortgage to complainant, Layne, upon a house and lot to secure an indebtedness of $800, which was duly registered, and on May 7, 1877, he sold and conveyed the same property to Dodson & Harper, in consideration of $1,870, which was the full value of the

lot, and executed to them a deed in fee simple there-
for, with covenants of seizin and general warranty.
At the time of this purchase and conveyance Dodson
& Harper had no *actual* knowledge of the existence
of said mortgage, though of course were affected with
constructive notice by the registration of it, and as
a matter of law took their deed subject to it as a
prior encumbrance.   Upon obtaining actual knowledge
of the existence and prior registration of this mort-
gage, Dodson & Harper were indignant at the decep-
tion that had been practiced upon them by Bone,
and were proceeding to file an attachment and in-
junction bill against him, by which to attach some
personal property which belonged to him individually,
and his interest in a large amount of partnership
property which he owned jointly with one Dodson,
consisting of horses, mules, wagons, farming imple-
ments, and crops grown that year on a large plan-
tation which they were cultivating, and to enjoin him
from disposing of it, and had a bill prepared, and
had procured the fiat of a judge upon it, and direct-
ing the issuance of attachment and injunction for that
purpose.   Learning this, Bone went to Layne, and
represented to him that Dodson & Harper were very
much incensed at him 'for having sold them the house
and lot without telling them of the existence of his
mortgage, and represented to him that they were going
to file a bill against him, and attach all his property
of every kind, and that it would ruin him, and ap-
plied to him, in order to prevent this, to relinqulsh
his mortgage upon this house and lot, and take an-

other mortgage upon certain other personal property for the security of his debt. The property he pro-posed to mortgage by this arrangement being a part of the property which Dodson & Harper were about to attach. Layne consented to do so, but said it was not convenient then for him to go to town, but sent word by Bone to Dodson & Harper to hold up their attachment bill, and that he would come to town on the next Monday and release his mortgage on the house and lot. Bone conveyed this message to Dodson & Harper, but they refused to delay their attachment proceedings until Monday, but agreed to hold them up until the next day. Bone went back to Layne, and gave him this information, and thereupon on the next morning he went with Bone to Lebanon, and relinquished his mortgage upon said house and lot, and surrendered it up to Bone, and took in lieu of it another mortgage upon said personal property, said last mortgage and relinquishment of the first being registered; whereupon Dodson & Harper desisted from filing their said bill against Bone, or taking any other steps to secure themselves, considering their title to said house and lot then complete by the removal of the incumbrance of said mortgage.

On August 21, 1877, Layne filed this bill seeking to set aside this relinquishment of said first mortgage upon the alleged grounds that said relinquishment had been procured by the fraudulent representations of Bone as to the conditions or extent of his indebtedness, and alleging that he had repudiated said

second mortgage as soon as he had discovered the
fraud of said Bone, and seeking to have said mort-
gage upon said house and lot set up and re-estab-
lished, and to have the same foreclosed for the satis-
faction of his said debt originally secured by it.
There is no allegation that either Dodson or Harper
participated in or knew of any fraudulent represen-
tations, or fraud of any kind made to or practiced
upon the complainant by Bone in order to procure
him to relinquish the mortgage. And they resist the
relief sought upon the ground that they had nothing
to do with procuring the relinquishment and surren-
der of said mortgage. That they were proceeding
by their attachment and injunction bill to secure
themselves out of the property of Bone, and could
and would have done so, but for the relinquishment
by Layne, and surrender by him of said mortgage
upon the house and lot which they had purchased of
Bone. That said relinquishment and surrender of
the same was made expressly for their benefit, and
to prevent them from proceeding to file said bill
and attach the property conveyed of Bone, and that
the property conveyed by Bone to Layne in the
second mortgage was a portion of the identical prop-
erty they were about to attach, and that Layne had
actually received and appropriated some portion of
the same to the satisfaction of his debt, notably a
bay mare and a watch of the value of $215, and
that in consequence of said relinquishment and surren-
der, they had desisted from filing their said attach-
ment bill, and the value of said property and the

opportunity of securing their debt and indemnifying themselves out of the property which they were about to attach had been lost to them, and they could not be placed in the same condition they were at the date of said relinquishment.

It is shown by the proof that complainant did obtain said bay mare, and sold her for $135, which was specifically mentioned in said attachment bill, and a gold watch worth $90, which they might probably have obtained under the same. Whether they could have realized any thing out of the other property they were about to attach does not certainly appear.

The chancellor dismissed the bill, and the Referees have reported that his decree should be affirmed. The report of the Referees finds that Layne was induced to release said mortgage by the fraud of Bone, and there is no exception to this part of the report, and hence it is taken to be true. But admitting this, does it entitle complainant to relief as against Dodson & Harper, who did not participate in or have any connection with it or knowledge of it? The very object of the release was to satisfy Dodson & Harper by perfecting their title to the house and lot, and thus prevent them from attaching Bone's property and instituting legal proceedings against him, which he represented to Layne would be very injurious to him, and this was accomplished by the relinquishment, and was a sufficient consideration to make it obligatory upon Layne as a contract. With the reasons that induced him to execute the release, Dodson & Harper had nothing to do, and were in

no manner responsible. A right accrued to them by the relinquishment, which was the removal of an incumbrance from their title, in consideration of which they desisted from their legal proceedings, and allowed the opportunity to Layne to take the property they were about to attach and make the most he could out of it, which he did, and is estopped from interfering with the title which was thus closed by his voluntary act without any fault on the part of Dodson & Harper.

The authorities relied upon by complainants' counsel have been examined, but they are inapplicable to the facts of this case. The exceptions to the report of the Referees will be overruled, the report confirmed, and the decree of the chancellor affirmed with costs.